**BLUE RIDGE BANK, Appellant,**

v.

**VERIBANC, INC., Appellee.**

No. 84–1619.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1984.

Decided Feb. 22, 1985.

James W. Haskins, Martinsville, Va. (George O. Burpeau, III, Young, Haskins, Mann, Gregory & Young, Martinsville, Va., on brief), for appellant.

L. Thompson Hanes, Roanoke, Va. (George W. Wooten, Woodward, Fox, Wooten & Hart, P.C., Roanoke, Va., on brief), for appellee.

Before SPROUSE and CHAPMAN, Circuit Judges, and DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.

CHAPMAN, Circuit Judge:

Appellant Blue Ridge Bank is a corporation domiciled and doing business in Virginia. It brought this action for defamation against Veribanc, Inc. a corporation domiciled and doing business in Massachusetts. Jurisdiction is based on diversity of citizenship. Veribanc moved to dismiss this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). From the order granting dismissal Blue Ridge has appealed. We reverse.

Veribanc is a corporation which analyzes financial information gathered from the Federal Reserve Board. Banks from around the country send information to the Federal Reserve Board which releases this information three months later in the form of raw computer data. Veribanc gathers the information, analyzes it, and distributes its analysis to its customers. Veribanc's customers consist mostly of money market and cash managers.

From June 1982 to November 1983 Veribanc received 4,900 orders from around the country. Of these orders 57, or 1.16 percent of the total, originated in Virginia. Veribanc earned $2,539 from the Virginia orders, or 1.42 percent of the total dollar volume of its business. Veribanc is not qualified to do business in Virginia; has advertised only in the *Banker and Tradesmen* which has a circulation in New England and in the *Medical/Surgeon's Economics;* has not made any direct mail solicitations in Virginia; has not advertised in any publications of general circulation in Virginia; has no offices or agents in Virginia; and has not sent anyone to Virginia to solicit new clients.

Like the other banks, Blue Ridge sent its report of condition and report of income to the Federal Reserve Board. Veribanc received this information and analyzed it and determined that Blue Ridge was one of 126 banks which faced zero equity within twelve months. The *Chicago Tribune Syndicate* purchased this analysis for Dan Dorfman, a financial columnist based in New York City. Dorfman used the analysis to write an article which appeared in the *Richmond Times-Dispatch* edition of May 22, 1983, under the headline "Possible Bank Flops." The article, based on the analysis supplied by Veribanc to Dorfman, is alleged to be false in stating that the bank had a $476,000 annualized net loss and would reach zero equity within eleven months.

In the course of the negotiations between the *Chicago Tribune Syndicate* and Veribanc, Veribanc sent a letter to Dorfman which stated: "We are furnishing this information to you with the understanding that, if you use it as source material for an article, your treatment will be representative and evenhanded, and that you will give VERIBANC, Inc. credit, including mention of our office's city and state (Wakefield, Massachusetts)."

On the basis of the May 22, 1983 article Blue Ridge sued Veribanc for defamation. In granting Veribanc's motion to dismiss the complaint for lack of personal jurisdiction, the district court held that it could not exercise jurisdiction over Veribanc under the Virginia long-arm statute, *Va.Code* § 8.01–328.1(A)(3) and (4), and that it was unnecessary to reach the due process issue.

■ The Fourth Circuit has developed a two part test to determine questions of personal jurisdiction where federal jurisdiction is based on diversity of citizenship. *Hardy v. Pioneer Parachute Co.*, 531 F.2d 193, 195 (4th Cir.1976); *Wolfe v. Richmond City Hospital Authority*, 745 F.2d 904, 909 (4th Cir.1984). The courts must determine, first, if there is statutory authority for the exercise of jurisdiction under the laws of the state and, second, if the exercise of jurisdiction complies with federal constitutional standards of due process. *Hardy*, 531 F.2d at 195; *Wolfe*, 745 F.2d at 909.

■ Blue Ridge first asserts that the district court has personal jurisdiction over Veribanc under the long arm statute of Virginia, *Va.Code* § 8.01–328.1(A)(3) and (4). Finding that personal jurisdiction exists under § (4), we need not discuss whether jurisdiction exists under § (3). Section 8.01–328.1(A)(4) states:

A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth.

Thus, the exercise of jurisdiction under this statute has two requirements: (1) a tortious injury in Virginia caused by an act or omission outside of Virginia; and (2) a relationship between the defendant and the Commonwealth which exists in any one of three ways which are specified in § (4). Although this statute has been extended to the utmost limits of due process, *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 180 S.E.2d 664 (1971), for the district court to exercise personal jurisdiction over Veribanc, Blue Ridge must show that Veribanc's activity fits these specific requirements of § 8.01–328.1(A)(4). The necessity of a plaintiff showing that a trial court has jurisdiction over an out-of-state defendant first through the long-arm statute itself is explained in *Willis v. Semmes, Bowen & Semmes*, 441 F.Supp. 1235 (E.D. Va.1977):

However, this depiction of the law's purpose was derived directly from a statement of intent by the state legislature, a legislature that particularized in the statute what it deemed the permissible outer limits for the acquisition of personal jurisdiction consistent with due process. Therefore, insistence that these particulars be satisfied even in those situations where it could plausibly be argued that a lesser standard would meet due process requirements is a course mandated by legislative judgment.

*Willis*, 441 F.Supp. at 1243; *see also, Beaty v. M.S. Steel Co.*, 401 F.2d 157 (4th Cir.1968) (construing a similar Maryland statute); *but see St. Clair v. Righter*, 250 F.Supp. 148 (W.D.Va.1966) (criticized in *Beaty*, 401 F.2d at 161). Blue Ridge obviously has shown facts that meet the requirement of the first part of this subsection: an act or omission outside of Virginia by Veribanc which has allegedly caused a tortious injury to Blue Ridge in Virginia.

Similarly, Veribanc obviously has some contact and relationship with Virginia. From June 16, 1982, the date of Veribanc's incorporation, through November 30, 1983, a seventeen month period, Veribanc received fifty-seven orders for its analyses from customers in Virginia. On each occasion Veribanc sent its analysis to the Virginia customer who then sent payment to Veribanc. Furthermore, Veribanc instructed Dan Dorfman to include its name and its location in his article. From these facts we conclude that Veribanc has engaged in a

persistent course of conduct in Virginia. *Willis,* 441 F.Supp. at 1241–42.

In *Willis,* in reference to what is a persistent course of conduct, the court stated:

> At a minimum, the plaintiff must prove that the defendant maintained some sort of ongoing interactions with the forum state. It is also important to keep in mind that the tortious injury must be caused by the act or omission outside the state and not by the persistent course of conduct within.

*Willis,* 441 F.Supp. at 1242. Blue Ridge has proved that Veribanc maintained "some sort of ongoing interactions with the forum state."

Having determined that the applicable Virginia law allows the exercise of long-arm jurisdiction over Veribanc, we must now determine if such an exercise of jurisdiction comports with due process. *E.g., Vishay Intertechnology, Inc. v. Delta International Corp.,* 696 F.2d 1062, 1064 (4th Cir.1982). In making this determination we must remember that:

> The Due Process Clause of the fourteenth amendment to the United States Constitution permits personal jurisdiction over a defendant in any state with which the defendant has "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken v. Meyer,* 311 U.S. 457, 463 [61 S.Ct. 339, 342, 85 L.Ed. 278]." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 [66 S.Ct. 154, 158, 90 L.Ed. 95] (1945). In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204 [97 S.Ct. 2569, 2579, 53 L.Ed.2d 683] (1977).

*Calder v. Jones,* — U.S. —, —, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984).

Furthermore, the defendant's conduct in connection with the forum state must be such that he should reasonably anticipate being hailed into court there. *Worldwide-Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1979). "The forum state does not exceed its powers under the due process clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *Id.* at 297–98, 100 S.Ct. at 567.

In this case, Veribanc advised Dorfman by letter that if he used the material he had to give Veribanc credit "including mention of our office's city and state (Wakefield, Massachusetts)." Veribanc understood that it would be given credit in the Dorfman article. It obviously knew that Dorfman was going to write an article that included the allegedly libelous information about Blue Ridge and that the article could find its way into the Commonwealth of Virginia.

By requiring Dorfman to reveal his source of financial information Veribanc obviously expected to receive additional orders from customers who read the information in the article. Because of this expectation Veribanc could reasonably expect to be hailed into court, on an allegation of false information supplied to Dorfman by Veribanc, in any forum in which Dorfman's article appeared.

The Dorfman article, giving credit to Veribanc, also could be considered a solicitation by Veribanc of business in Virginia. In determining whether due process is satisfied, "it is significant that the cause of action arises out of the defendant's contacts with the forum state." *Vishay Intertechnology,* 696 F.2d at 1069.

Furthermore, Veribanc's fifty-seven contacts with its subscribers in Virginia add strength to the exercise of personal jurisdiction over Veribanc.

Another factor which favors the exercise of jurisdiction over Veribanc is the interest of Virginia in the action. Blue Ridge is a local bank, and the brunt of the alleged injuries to Blue Ridge occurred in Virginia. *See Calder v. Jones,* — U.S. —, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Keeton v. Hustler Magazine, Inc.,* — U.S. —,

104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). In *Keeton,* the Supreme Court recognized the interests of the state in protecting out-of-state *plaintiffs* from the tort of libel. These interests are more significant here because Blue Ridge is a local bank.

We hold that subjecting Veribanc to personal jurisdiction would not violate due process. The district court incorrectly held that Veribanc could not be subjected to jurisdiction under Virginia's long-arm statute. The decision of the district court is reversed and remanded for further proceedings in accordance with this opinion.