Frederick W. MONCRIEF, Plaintiff,

v.

LEXINGTON HERALD–LEADER
CO., Defendant.

No. C.A. 85–1714.

United States District Court,
District of Columbia.

Oct. 18, 1985.

Joel P. Bennett, Washington, D.C., for plaintiff.

Richar M. Schmidt, Jr., Ivan D. Volner, Frank Wiggins, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

STANLEY S. HARRIS, District Judge.

This case now is before the Court on the defendant Lexington Herald-Leader Company's motion to dismiss the case for lack of personal jurisdiction. In his complaint, the plaintiff alleges that a newspaper owned by the defendant printed an article which contained false and libelous statements about him. The Court concludes that it lacks personal jurisdiction over the defendant, and dismisses the case.

### Background

On May 27, 1984, the defendant's newspaper, the *Lexington Herald-Leader*, pub-

lished an article written by Michael York, one of its reporter/correspondents, which contained the following statement about the plaintiff:

And in the second incident, Kennedy said, the department lawyer involved, Fred Moncrief, was the one guilty of improper conduct. "He is a lazy lawyer, and I'm not surprised that he has nothing better to do than to bring this sort of complaint," Kennedy said. "I've been in cases in which he has appeared totally unprepared and even argued positions that hurt his own case."

The plaintiff has filed a separate suit against Joseph P. Kennedy, the Administrative Law Judge who was quoted in the article. That case, *Moncrief v. Kennedy*, is pending before this Court as Civil Action No. 85–783. In this case, he is suing the Lexington Herald-Leader Company, alleging that the statement was published with reckless disregard for its falsity, maliciously, and without consulting the plaintiff.

### Discussion

The plaintiff asserts that the Court has jurisdiction over the defendant based on two subsections of D.C.Code § 13–423 (1981), the District of Columbia's long-arm statute. Section 13–423 lists the grounds for personal jurisdiction over defendants based on defendants' conduct. Section 13–423(a)(3) allows jurisdiction over a person who causes "tortious injury in the District of Columbia by an act or omission in the District of Columbia...." The defendant, for purposes of its motion, admits that Mr. Moncrief was injured in the District.

■ Under the District of Columbia statute, however, it is not enough to show that the injury occurred in the District of Columbia. The act causing the injury also must be performed in the District. *Margoles v. Johns*, 483 F.2d 1212, 1217–18 (D.C.Cir.1973). There is no doubt that the defendant in this case did mail subscription copies of the newspaper containing the allegedly libeling article into the District of Columbia. The plaintiff contends that this publication of the libelous article is the type of "act" contemplated under the statute. The Court disagrees.

In interpreting the District of Columbia's long-arm statute, the Court must consider the case law interpreting the Virginia and Maryland long-arm statutes. Congress' intent in enacting the District of Columbia statute was to make it identical in scope to the comparable Virginia and Maryland statutes. *Margoles, supra,* at 1215–16. Several courts have considered the scope of the Virginia statute in cases in which a libelous publication was mailed into Virginia from another jurisdiction. *See, e.g., Davis v. Costa-Gavras*, 580 F.Supp. 1082 (S.D.N.Y. 1984); *St. Clair v. Righter*, 250 F.Supp. 148 (W.D.Va.1966). Those courts held that the Virginia long-arm statute does not confer jurisdiction over a defendant who mails libelous material into the state from outside. *Davis*, 580 F.Supp. at 1087; *St. Clair*, 250 F.Supp. at 151. The Virginia statute, unlike some other state long-arm statutes, makes a distinction between the act causing injury and the tortious injury itself. Some statutes confer jurisdiction based upon a "tortious act" committed by the defendant within the jurisdiction. The phrase "tortious act" has been defined to include actions performed outside the state which cause injury within the state. *See, e.g., McMahon v. Boeing Airplane Co.*, 199 F.Supp. 908, 909 (N.D.Ill.1961) (interpreting Ill.Code ch. 110, § 17(1)(b)); *Bullard v. Rhodes Pharmacal Co.*, 263 F.Supp. 79, 82 (D.Mon.1967) (interpreting Mont.R.Civ.P. 4B(1)(b)).

The Virginia statute, on the other hand, requires that both the act and the injury occur in the same jurisdiction. An act also cannot confer jurisdiction if it occurred in Virginia in a merely technical sense. *Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.*, 218 Va. 533, 238 S.E.2d 800 (1977). In a libel case, the act occurs wherever the libel is actually produced. In *St. Clair*, a letter written elsewhere was mailed into Virginia. The Court found that no act had occurred in Virginia because the letter was written and mailed outside of Virginia. *Id.*, at 151. Similarly, in *Davis*

774

the Court found that a shipment of allegedly libelous books and video cassettes into Virginia did not constitute an act under the statute. *Id.*, at 1087.

 In this case, the libelous article was printed, and the newspapers were mailed, outside of the District of Columbia. The fact that they were mailed into the District of Columbia and caused injury here is not a sufficient basis for jurisdiction under the case law cited above. As no act occurred within the District of Columbia, this Court cannot exercise jurisdiction under D.C.Code § 13–423(a)(3).

Section 14–323(a)(4) allows jurisdiction over a defendant who commits an act outside of the District which causes injury within the District. This Court may exercise jurisdiction over such a defendant only if he "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the District of Columbia." D.C.Code § 14–323(a)(4) (1981). The plaintiff agrees that the defendant does not derive substantial revenue from the District of Columbia.

The plaintiff does not argue that the defendant engaged in any other consistent conduct in the District of Columbia other than the maintenance of an office for newsgathering purposes. The exception to the long-arm statute for newsgathering activities long has been recognized. *Margoles*, at 1222.

 The plaintiff argues that the newsgathering exception applies only to the gathering of news of national interest, relying on *Founding Church of Scientology v. Verlag*, 536 F.2d 429 (D.C.Cir.1976). The Court finds that *Founding Church* does not support that proposition. The *Founding Church* court did observe that the newsgathering exception was initially created to protect the gathering of national news in Washington, D.C. *Id.*, at 434. The court does not suggest, however, that the newsgathering exception is limited to gathering news of national interest.

The Court concludes that it may not exercise jurisdiction over the defendant under either of the two subject long-arm provisions. The defendant neither committed an act nor engaged in sufficient conduct within the District of Columbia to subject it to jurisdiction in this Court.

For the foregoing reasons, and upon consideration of the defendant's motion to dismiss, the opposition thereto, and the reply, it hereby is

ORDERED, that the defendant's motion is granted and the complaint is dismissed.

SO ORDERED.